COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Bumgardner and Agee
Argued at Alexandria, Virginia


VESSELIN A. PANAJOTOV
                                    MEMORANDUM OPINION[*] BY
v.    Record No. 1054-01-4        JUDGE JAMES W. BENTON, JR.
                                         JUNE 4, 2002
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                     Stanley P. Klein, Judge

          Mark J. Petrovich (Martin, Arif, Petrovich &
          Walsh, on brief), for appellant.

          Stephen R. McCullough, Assistant Attorney
          General (Jerry W. Kilgore, Attorney General,
          on brief), for appellee.


     The sole issue raised by this appeal is whether the evidence

was sufficient for the jury to convict Vesselin A. Panajotov of

receiving stolen property in violation of Code § 18.2-108.  We

affirm the conviction.

                              I.

     When the issue of the sufficiency of the evidence is raised

"[o]n appeal, 'we review the evidence in the light most favorable

to the Commonwealth, granting to it all reasonable inferences

fairly deducible therefrom.'"  Archer v. Commonwealth, 26 Va. App.

1, 11, 492 S.E.2d 826, 831 (1997)(citation omitted).  So viewed,

_____

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

the evidence proved that on June 30, 2000 Panajotov entered an Office Depot store in Fairfax County to return a clock and several other items.  Indicating the items had been purchased in a Maryland store that same day, Panajotov told the salesperson "his boss bought the clock and . . . didn't need it anymore."  After the salesperson examined the receipt and gave Panajotov $617.14 for the items, another employee called the police because the store manager thought Panajotov was suspicious.

When Panajotov left the store, the store manager followed him.  Although Panajotov's car was on the parking lot with its engine engaged, Panajotov walked to the back of the building and did not return to his car for about an hour.  When Panajotov returned to his car, a Fairfax police officer was waiting for him.  Panajotov spoke to the officer and permitted the officer to search his car.  Inside the car, the officer saw a map of Virginia and Maryland and a listing of Office Depot stores.  In the trunk of the car, the officer saw nine new clocks in sealed boxes.  Four of the boxes contained retail store labels.  Panajotov told the officer that the items in the trunk belonged to "Gregory" and that "Gregory" had purchased the clocks from another man and intended to sell the clocks to Office Depot to make a profit.  He told the officer he had spent the past hour looking for "Gregory" and had left the car's engine engaged to allow the air conditioning to function.  The officer arrested Panajotov and, during a search incident to the arrest, found cash in excess of $2,000.

-

Daniel Salas, a general manager for Office Depot, testified that four labels on the boxes recovered from the trunk of Panajotov's car indicated the clocks were from Office Depot's stock. Each label had a "SKU number . . . that positively identifies that . . . particular box" and other numbers indicating particular stores. For example, one of the boxes was from store 655, one was from store 565, and another one was from store 381.

Bill Krueger, a store manager for Office Depot store 655 in Virginia Beach, testified that he used the store's computer to check the "SKU" identity number from the label of one of the boxes. Although the computer inventory program indicated the store had two of the clocks, none were in the store and none had been sold. Krueger testified that the inventory system is reliable and that inventory items unaccounted for may be stolen, incorrectly tagged, or missing in the store. He further testified that an inventory of the store's merchandise on May 24, 2000, approximately a month before Panajotov's arrest, disclosed that those clocks were in the store.

Kurt Luedtke, a manager for Office Depot store 565, testified he also checked the "SKU" number of one of the boxes recovered from Panajotov's trunk. The label indicated the clock came from his store. Although his store's inventory system indicated the store had three clocks, he determined the store only had two. In late May 2000, however, when they performed an inventory of the clocks in the store, none were missing.

-

Panajotov testified he met "Greg" at a bar in New Jersey and drove him to a business warehouse where they filled the car with microwave ovens, clocks, and thermostats.  Panajotov could not recall the name of the business.  He agreed to drive "Greg" to Washington, D.C. so that "Greg" could sell the items.  Panajotov testified that all the items belonged to "Greg" and that "Greg" sold many of them at businesses and homes between New Jersey and Virginia.  On one occasion, they stopped at an Office Depot to purchase a clock because "Greg" said a customer had requested a receipt.  "Greg" later asked Panajotov to return the items to an Office Depot store to obtain cash.

The jury convicted Panajotov of receiving stolen property.

### III.

The principal is well established that circumstantial evidence may be sufficient to establish a fact beyond a reasonable doubt.  Starks v. Commonwealth, 225 Va. 48, 55, 301 S.E.2d 152, 156 (1983).  See also Leeth v. Commonwealth, 223 Va. 335, 339, 288 S.E.2d 475, 477 (1982).  The evidence proved that Panajotov had nine clocks in their original store wrappers.  Four of the nine clocks had labels that identified them as belonging to specific Office Depot stores.  Based on the "SKU number that positively identifies . . . [each] particular box," the store managers testified that those boxes were missing from specific stores and had not been sold.

-

The jury did not have to accept Panajotov's explanation of his possession of the clocks.  "The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented."  Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995).  From the proof that the two stores were missing unsold clocks and that the clocks in Panajotov's car trunk came from those stores, the jury could conclude beyond a reasonable doubt that the clocks had been stolen.

IV.

"Knowledge that the goods received were stolen property is an essential element of the crime, one which the Commonwealth must prove beyond a reasonable doubt."  Lewis v. Commonwealth, 225 Va. 497, 503, 303 S.E.2d 890, 893 (1983).  "Guilty knowledge 'is sufficiently shown if the circumstances proven are such as must have made or caused the recipient of stolen goods to believe they were stolen.'"  Shaver v. Commonwealth, 30 Va. App. 789, 800-01, 520 S.E.2d 393, 399 (1999).  "Absent proof of an admission against interest, such knowledge necessarily must be shown by circumstantial evidence."  Lewis, 225 Va. at 503, 303 S.E.2d at 893.

The evidence proved that although Panajotov resided in New Jersey, he was returning a clock to a store in Virginia.  Panajotov possessed a list of Office Depot stores and had nine new

-

clocks, some of which were from Office Depot Stores that were missing clocks.  He had returned one clock in exchange for cash and he possessed over $2,000 in cash.  He exhibited suspicious conduct after exchanging the clock for cash.

The jury could conclude from these facts and the improbable nature of Panajotov's testimony that Panajotov knew the clocks were stolen and that he had taken one of the clocks to the store to obtain money for it knowing that it and the other clocks were stolen.  We hold that the evidence was sufficient to prove beyond a reasonable doubt that Panajotov knew the clocks he possessed were stolen, and we affirm the judgment of conviction for violating Code § 18.2-108.

Affirmed.